**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF
ILLINOIS EASTERN DIVISION**

| | |
|---|---|
| REEBOK INTERNATIONAL LIMITED, | |
| Plaintiff, | Case No. 26-cv-07759 |
| v. | |
| THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A, | |
| Defendants. | |

**COMPLAINT**

Plaintiff Reebok International Limited ("Reebok") brings this action against the Partnerships and Unincorporated Associations identified on Schedule A filed herewith (collectively, "Defendants") alleging as follows:

**I. JURISDICTION AND VENUE**

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, et seq., 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through ecommerce stores operating under the seller aliases identified in Schedule A attached hereto (the "Seller Aliases"). Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold products using infringing and counterfeit versions of Reebok's trademarks to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Reebok substantial injury in the State of Illinois.

**II. INTRODUCTION**

3. Reebok files this action to combat e-commerce store operators who trade upon Reebok's reputation and goodwill by selling unauthorized and unlicensed products, including apparel and footwear, using infringing and counterfeit versions of Reebok's federally registered trademarks (the

"Counterfeit Reebok Products"). Defendants operate e-commerce stores under one or more Seller Aliases that advertise, offer for sale and sell Counterfeit Reebok Products to unknowing consumers.

4. E-commerce stores operating under the Seller Aliases share unique identifiers, establishing a logical relationship between them and giving rise to the inference that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid and mitigate liability by operating under multiple Seller Aliases to conceal their identities and the full scope and interworking of their counterfeiting operation. Reebok is forced to file this action to combat Defendants' counterfeiting of its registered trademarks, as well as to protect unknowing consumers from purchasing Counterfeit Reebok Products over the Internet. Reebok has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks because of Defendants' actions and seeks injunctive and monetary relief.

### III. THE PARTIES

5. Reebok is organized and existing under the laws of the United States of America with its principal place of business in New York, United States of America.

6. Reebok International Limited ("Reebok") is a world-famous athletic footwear and apparel brand, with roots in the sporting-goods business founded by Joseph William Foster in 1895 and formally established under the Reebok name in 1958 in Bolton, England. Reebok is engaged in the design, marketing, and sale of a diverse portfolio of high-quality performance and lifestyle products for men and women, including athletic footwear, sportswear, and related accessories (collectively, the "Reebok Products"), all of which prominently bear its internationally recognized and federally registered trademarks. In 2022, following the completion of adidas's divestiture of the brand, Reebok became part of the Authentic Brands Group portfolio.

7. Reebok Products have become enormously popular and even iconic, driven by Reebok's arduous quality standards and innovative designs. Among the purchasing public, genuine Reebok Products are instantly recognizable as such. In the United States and around the world, the Reebok brand has come to symbolize high quality, and Reebok Products are among the most recognizable of their kind in the world.

8. Reebok Products are distributed and sold to customers through retailers throughout the United States via its e-commerce website located at www.reebok.com, and through a selective network of high-quality department stores in Illinois such as Nordstrom, Macys, and Bloomingdales.

9. Reebok incorporates a variety of distinctive marks in the design of its various Reebok Products. As a result of its long-standing use, Reebok owns common law trademark rights in its trademarks.

Reebok has also registered its trademarks with the United States Patent and Trademark Office. Reebok Products typically include at least one of Reebok's registered trademarks. Often several Reebok marks are displayed on a single product. Reebok uses its trademarks in connection with the marketing of its Reebok Products, including the following marks which are collectively referred to as the "Reebok Trademarks."

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| 7483287 | Reebok | August 20, 2024 | For: hair accessories, namely barrettes, hair scrunchies, hairpins, hair clips, hair ribbons, hair bands made of rubber band, hair sticks, hair ties, bobby pins, hair pins, hair bows in class 26 |
| 7755603 | REEBOK | April 8, 2025 | For: bed sheets, bed blankets, quilts, throws, comforters, coverlets, duvets, pillow cases, pillow shams, pillow covers, bedspreads, bed skirts, dust ruffles, bed pads, mattress pads, mattress covers, towels, washcloths, shower curtains, shower curtain liners in class 24 |
| 1736143 | REEBOK | December 1, 1992 | For: sunglasses [and prerecorded videotapes in the areas of fitness, exercise and athletics] in class 9 |
| 2211784 | REEBOK | December 15, 1998 | For: health and fitness club services • organizing and conducting classes [, seminars and workshops] in the field of fitness • arranging and conducting athletic competitions • and providing exercise facilities • health club services in class 41 |
| 7415363 | REEBOK | June 11, 2024 | For: perfumes, eau de toilette, cologne, body sprays, personal deodorants in class 3 |

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| 7414660 | REEBOK | June 11, 2024 | For: bedding for pets in the nature of blankets for household pets, pet blankets, pet throws in class 24 |
| 7755612 | **Reebok** | April 8, 2025 | For: pillows in class 20 |
| 7496805 | REEBOK | September 3, 2024 | For: retail store services rendered in a virtual environment featuring virtual goods, namely, footwear • online retail store services rendered in a virtual environment featuring virtual merchandise, namely, footwear in class 35 |
| 7496804 | REEBOK | September 3, 2024 | For: downloadable virtual goods, namely, computer programs featuring footwear for use in online virtual worlds • downloadable multimedia file containing artwork relating to sport and footwear authenticated by non-fungible tokens (nfts) in class 9 |
| 7673528 | REEBOK | January 28, 2025 | For: protein supplements • dietary supplements • electrolyte replacement solutions • nutritional supplements • powdered nutritional supplement drink mix and concentrate in class 5 |
| 7517267 | REEBOK | September 24, 2024 | For: entertainment services, namely, |

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| | | | providing on-line, non-downloadable virtual footwear for use in virtual environments created for entertainment purposes in class 41 |
| 7747812 | REEBOK | April 1, 2025 | For: rugs, bath mats, rubber mats, shower mats, floor mats in class 27 |
| 2870586 | REEBOK | August 3, 2004 | For: jewelry, namely, watches in class 14 |
| 7134672 | REEBOK | August 8, 2023 | For: pet waste bag holders in the nature of fixed dispensers not of metal for pet waste bags in class 20 |
| 1534383 | REEBOK | April 11, 1989 | For: socks, skirts, sweater-vests, dresses and performance bodywear (such as tights, leotards and unitards) in class 25 |
| 1728475 | REEBOK | October 27, 1992 | For: retail store and outlet services in the field of clothing, shoes, bags and related accessories, sports accessories and [audio and video tapes] in class 42 |
| 7747825 | Reebok | April 1, 2025 | For: rugs, bath mats, rubber mats, shower mats, floor mats in class 27 |
| 7708397 | Reebok | February 25, 2025 | For: downloadable software application for accessing meditation classes, fitness training, |

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| | | | instruction, and guided workouts • downloadable software applications for use by individuals for participating in meditation classes, exercise classes, and fitness training • downloadable software application for streaming audio and audiovisual content in the field of fitness training and instruction and meditation • downloadable software application for use by individuals participating in health, exercise, meditation, physical training, and fitness classes in tracking athletic performance, developing and monitoring personal activity and exercise plans and training goals, and receiving feedback on results • digital media, namely, downloadable audio and audiovisual recordings, all in the field of exercise, fitness, wellness, meditation, and personal development in class 9 |
| 7415274 | REEBOK | June 11, 2024 | For: drinkware • water bottles sold empty • sports bottles sold empty • beverage ware in class 21 |
| 5530372 | REEBOK | July 31, 2018 | For: apparel, namely, bra tops, jackets, wrist bands, headbands, warm-up suits, pants, [ athletic |

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| | | | uniforms, ] gloves, and infant wear, namely, footwear in class 25 |
| 7755602 | REEBOK | April 8, 2025 | For: pillows in class 20 |
| 7763109 | Reebok | April 15, 2025 | For: bed sheets, bed blankets, quilts, throws, comforters, coverlets, duvets, pillow cases, pillow shams, pillow covers, bedspreads, bed skirts, dust ruffles, bed pads, mattress pads, mattress covers, towels, washcloths, shower curtains, shower curtain liners in class 24 |
| 7763670 | REEBOK IMPACT | April 15, 2025 | For: entertainment services, namely, providing online, non-downloadable virtual goods, namely, footwear for use in virtual environments created for entertainment purposes in class 41 |
| 1390793 | REEBOK | April 22, 1986 | For: all purpose sport bags in class 18 <br><br> For: sweatpants, shorts, sweaters, polo shirts, hats, visors, headbands, sweatbands, t-shirts, sweatshirts in class 25 |
| 2215348 | REEBOK | December 29, 1998 | For: printed materials, namely, instructional manuals, pamphlets, [ newsletters] and brochures all in the field of fitness • [ school supplies, namely, binders, folders, notebooks, day planners, |

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| | | | calendars, portfolios, and note pads ] in class 16 |
| 1133704 | REEBOK | April 22, 1980 | For: shoes for use in athletic sports in class 25 |
| 2173594 | REEBOK | July 14, 1998 | For: volleyballs • [ soccer balls • rugby balls • soccer shin pads • batting gloves • fielding mitts • ] exercise weights • exercise machines, namely, treadmills, [ stationary cycles, ] cross training exercise machines, exercise mats • fitness and resistance bands • resistance tubes • and jump ropes in class 28 |
| 2217838 | REEBOK | January 12, 1999 | For: fitness consulting in class 42 |

10. The Reebok Trademarks have been used exclusively and continuously in the U.S. by Reebok and have never been abandoned. The above U.S. registrations for the Reebok Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. Attached hereto as Exhibit 1 are true and correct copies of the U.S. Registration Certificates for the Reebok Trademarks included in the above table. The registrations for the Reebok Trademarks constitute prima facie evidence of their validity and of Reebok's exclusive right to use the Reebok Trademarks pursuant to 15 U.S.C. § 1057(b).

11. The Reebok Trademarks are exclusive to Reebok and are displayed extensively on Reebok Products and in Reebok's marketing and promotional materials. Reebok Products have long been among the most famous and popular of their kind in the world and have been extensively promoted and advertised at great expense. In fact, Reebok has expended millions of dollars annually in advertising, promoting, and marketing featuring the Reebok Trademarks. Because of these and other factors, the Reebok name and the Reebok Trademarks have become famous throughout the United States.

12. The Reebok Trademarks are distinctive when applied to Reebok Products, signifying to the purchaser that the products come from Reebok and are manufactured to Reebok's quality standards. Whether Reebok manufactures the products itself or licenses others to do so, Reebok has ensured that

products bearing its trademarks are manufactured to the highest quality standards. The Reebok Trademarks have achieved tremendous fame and recognition, which has only added to the distinctiveness of the marks. As such, the goodwill associated with the Reebok Trademarks is of incalculable and inestimable value to Reebok.

13. Reebok operates an e-commerce website where it promotes Reebok Products at Reebok.com. Reebok Products are featured and described on the website and are available for purchase. The Reebok.com website features proprietary content, images, and designs exclusive to Reebok.

14. Reebok has expended substantial time, money, and other resources in developing, advertising and otherwise promoting the Reebok Trademarks. As a result, products bearing the Reebok Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high quality products from Reebok. Reebok is a multi-million-dollar business, and Reebok Products have become among the most popular of their kind in the world.

15. Defendants are individuals and business entities of unknown makeup who own and/or operate one or more of the e-commerce stores under the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Reebok. On information and belief, Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions with lax trademark enforcement systems or redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

16. On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Reebok to learn Defendants' true identities and the exact interworking of their counterfeit network. If Defendants provide additional credible information regarding their identities, Reebok intends to take appropriate steps to amend the Complaint.

## IV. DEFENDANTS' UNLAWFUL CONDUCT

17. The success of the Reebok brand has resulted in its significant counterfeiting. Consequently, Reebok has a worldwide anti-counterfeiting program and regularly investigates suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers. In recent years, Reebok has identified numerous fully interactive e-commerce stores, including those operating under the Seller Aliases, which were targeting and/or offering for sale Counterfeit Reebok Products to consumers in this District and throughout the United States.

18.     According to U.S. Customs and Border Protection ("CBP"), in fiscal year 2021 "CBP made over 27,000 seizures . . . with an estimated manufacturer's suggested retail price (MSRP) of over $3.3 billion, which represents an increase of 152% over the previous Fiscal Year, when goods valued at $1.3 billion MSRP were seized for IPR [Intellectual Property Rights] violations." (See Exhibit 2, Fiscal Year 2021 Intellectual Property Rights Seizure Statistics Report, at 5.) In FY 2021, over 24,000 of the IPR seizures (about 89 percent of the total) were shipped via mail or express services (as opposed to cargo or other means). (Id. at 37.) Over 50 percent of the IPR seizures (with an MSRP of over $2.5 billion) originated from China and Hong Kong. (Id. at 35.)

19.     Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." (See Exhibit 3, Daniel C.K. Chow, Alibaba, Amazon, and Counterfeiting in the Age of the Internet, 40 NW. J. INT'L L. & BUS. 157, 186 (2020).)

20.     In its report on "Combating Trafficking in Counterfeit and Pirated Goods," the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans found that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommended that "[s]ignificantly enhanced vetting of third-party sellers" is necessary. (Exhibit 4 hereto at 11, 35 (Jan. 24, 2020).) The report also notes that counterfeit products account for billions in economic losses, resulting in millions of lost jobs for legitimate businesses. (Id. at 18-19.)

21.     Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual store fronts. (Id. at 22.) Since platforms generally do not require a seller to identify its underlying business entity, counterfeiters can have many different profiles that appear unrelated even though they are commonly owned and operated. (Id. at 39.) Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters." (Id. at 25.)

22.     Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold Counterfeit Reebok Products to residents of Illinois.

23.     Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online

retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars via credit cards, Alipay, Amazon Pay, and/or PayPal, among other methods. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. Reebok has not licensed or authorized Defendants to use any of the Reebok Trademarks, and none of the Defendants are authorized retailers of genuine Reebok Products.

24. Many Defendants also deceive unknowing consumers by using the Reebok Trademarks without authorization within the content, text, and/or meta tags of their e-commerce stores to attract search engines crawling the Internet looking for websites relevant to consumer searches for Reebok Products. Other e-commerce stores operating under Seller Aliases omit using the Reebok Trademarks in the item title to evade enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Reebok Products.

25. On information and belief, Defendants have engaged in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

26. On information and belief, Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Counterfeit Reebok Products. Such seller alias registration patterns are one of many common tactics used by the Defendants to conceal their identities and the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

27. Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit any contact information or other information for identifying Defendants or other aliases they operate or use. E-commerce stores operating under the Seller Aliases include other notable common features such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, advertising tactics, similarities in price and quantities, the same incorrect grammar or misspellings, and/or the use of the same text and images. Additionally, Counterfeit Reebok Products for sale by the Seller Aliases

28. bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Counterfeit Reebok Products were manufactured by and come from a common source and that Defendants are interrelated.

29. On information and belief, Defendants are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as sellerdefense.cn,

kaidianyo.com and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

30.   Counterfeiters such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation despite Reebok's enforcement efforts. On information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Reebok.

31.   On information and belief, Defendants are an interrelated group of counterfeiters working in active concert to manufacture, import, distribute, offer for sale, and sell Counterfeit Reebok Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without authorization or license from Reebok, have jointly and severally, knowingly and willfully used and continue to use the Reebok Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Reebok Products into the United States and Illinois over the Internet.

32.   Defendants' unauthorized use of the Reebok Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Reebok Products, including the sale of Counterfeit Reebok Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Reebok.

**COUNT I**

**TRADEMARK INFRINGEMENT AND COUNTERFEITING**

**(15 U.S.C. § 1114)**

33.   Reebok hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

34.   This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered Reebok Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The Reebok Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from Reebok Products offered, sold, or marketed under the Reebok Trademarks.

35.   Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the Reebok Trademarks without Reebok's permission.

36.   Reebok is the exclusive owner of the Reebok Trademarks. Reebok's United States Registrations for the Reebok Trademarks (Exhibit 1) are in full force and effect. On information and belief,

Defendants have knowledge of Reebok's rights in the Reebok Trademarks and are willfully infringing and intentionally using counterfeits of the Reebok Trademarks. Defendants' willful, intentional, and unauthorized use of the Reebok Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit Reebok Products among the general public.

37.     Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

38.     Reebok has no adequate remedy at law, and if Defendants' actions are not enjoined, Reebok will continue to suffer irreparable harm to its reputation and the goodwill of its well-known Reebok Trademarks.

39.     The injuries and damages sustained by Reebok have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit Reebok Products.

## COUNT II

## FALSE DESIGNATION OF ORIGIN

## (15 U.S.C. § 1125(a))

40.     Reebok hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

41.     Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Reebok Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Reebok or the origin, sponsorship, or approval of Defendants' Counterfeit Reebok Products by Reebok.

42.     By using the Reebok Trademarks on the Counterfeit Reebok Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Reebok Products.

43.     Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Reebok Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

44.     Reebok has no adequate remedy at law and, if Defendants' actions are not enjoined, Reebok will continue to suffer irreparable harm to its reputation and the goodwill of its Reebok brand.

## PRAYER FOR RELIEF

WHEREFORE, Reebok prays for judgment against Defendants as follows:

(1)    That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

a.    Using the Reebok Trademarks or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine Reebok Product or is not authorized by Reebok to be sold in connection with the Reebok Trademarks;

b.    Passing off, inducing, or enabling others to sell or pass off any product as a genuine Reebok Product that is not Reebok's or not produced under the authorization, control, or supervision of Reebok and approved by Reebok for sale under the Reebok Trademarks;

c.    Committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Reebok Products are those sold under the authorization, control or supervision of Reebok, or are sponsored by, approved by, or otherwise connected with Reebok;

d.    Further infringing the Reebok Trademarks and damaging Reebok's goodwill;
And

e.    Manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Reebok, nor authorized by Reebok to be sold or offered for sale, and which bear any of Reebok's trademarks, including the Reebok Trademarks, or any reproductions, counterfeit copies or colorable imitations thereof;

(2)    For entry of an Order that, upon Reebok's request, those with notice of the injunction, including, without limitation, any online marketplace platforms such as eBay, AliExpress, Alibaba, Amazon, Wish.com, and Dhgate shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the Reebok Trademarks;

(3)    That Defendants account for and pay to Reebok all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the Reebok Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

(4)    In the alternative, that Reebok be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the Reebok Trademarks;

(5)   That Reebok be awarded its reasonable attorneys' fees and costs; and

(6)   That awards Reebok any and all other relief that this Court deems just and proper.

Dated July 02 2026                                        Respectfully submitted,


*/s/ Paul Kossof*

_____


Counsel for Plaintiff, Reebok International
Limited
Paul Kossof (ARDC #6319307)
KossofIPR
1509 Waukegan Road, #1162
Glenview, IL, 60025
(224) 433-1553
p.kossof@kossofipr.com